Commonwealth *v.* McClurg, Appellant.

Argued October 1, 1940.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, RHODES and HIRT, JJ.

*Elgin E. Weest,* for appellant.

*Henry G. Sweney,* 1st Assistant District Attorney,

with him *William B. McClenachan, Jr.,* District Attorney, for appellee.

OPINION BY PARKER, J., November 12, 1940:

The appellant, William A. McClurg, and fourteen other persons were jointly indicted by a grand jury of Delaware County upon three bills charging bookmaking, establishing and maintaining a gambling house and gambling equipment, and conspiracy to set up and establish certain games of hazard with instruments upon which one might play for money and other valuable things. When the cases were called for trial eight of the defendants were fugitives and the remaining seven were tried. Those seven were found guilty on one or more of the indictments. The appellant was convicted on all three indictments and one sentence was pronounced against him on the three.

It was established by overwhelming evidence, not questioned by the appellant, that an elaborate gambling house was operated at the locus in question and was frequented by many patrons who gambled for money and participated in pool-selling and bookmaking. The appellant now contends that the evidence against him was not sufficient to sustain the verdict and that the trial judge in his charge to the jury used prejudicial and inflammatory language, thereby depriving him of a fair trial. We are all of the opinion that the judgment must be sustained.

Entrance to the establishment, which was principally on the third floor of a mercantile building, was protected by heavy iron doors. One of these entrances had a glass panel affording a guard maintained at the door an opportunity to determine who should be admitted. One wishing to enter the premises either presented a card or furnished identification satisfactory to the doorkeeper. About fourteen persons were employed as cashiers and tablemen to operate the "black jack" tables

and "crap" tables, post information on horse races, and accept wagers and sell pools on behalf of the owners of the establishment. The place was also liberally provided with punch boards.

While there was not any evidence that appellant was engaged in actually operating the tables he was identified by witnesses as being present in the place on three occasions, including a day when the establishment was raided by the state police. One of the Commonwealth's witnesses, a state policeman, testified that he heard the operator in charge of a "crap" table complain to McClurg that the frequenters were so crowding the table that they were interfering with those who wished to engage in play for money. Appellant answered: "Don't bother about any of that. You take care of the crap table, and I will take care of the rest of this place." On the day the premises were raided and appellant was arrested, he had the officer take him to a room on the second floor where he had left his hat and coat. There was no evidence that customers were provided with similar service.

The appellant took the stand and denied that he had any interest in the establishment or that he was employed there. He testified that he had been a member of a club which had operated the place at a former time but was not a member at the time of the raid. He said that his only business there was to take a special agent of an insurance company, which was carrying the insurance on the building, to the premises for an inspection with a view to obtaining a reduction in the premium rate and that he was performing this service for the insurance agency which had placed the insurance. He admitted that he did not have any interest in the insurance agency. Neither the agent nor McClurg could identify or give the address of the individual in whose name the premises were insured. On the whole, the jury might well have drawn inferences unfavorable to

appellant from his testimony and that of his witnesses. We are of the opinion that the testimony showing directions from McClurg to one of the actual operators as to what that operator should do and what McClurg would do with relation to the conduct of the business, taken with the other evidence, was sufficient to sustain the verdict. It was for the jury to pass upon the credibility of the witnesses. They believed the state policeman rather than defendant. When the Commonwealth's evidence is taken as verity, no reasonable inference can be drawn except that McClurg was either interested as an owner of the place or was assisting in its maintenance and operation and that he unlawfully conspired with others so to do. But one sentence was passed on the three indictments so complaint cannot be made as to the overlapping of the offenses charged.

Appellant relies principally upon the cases of *Com. v. Coyne,* 115 Pa. Superior Ct. 23, 175 A. 291, and *Com. v. Rosen,* 141 Pa. Superior Ct. 272, 14 A. 2d 833. In the Coyne case, as here, the contention of the Commonwealth was that the defendant was concerned either in the ownership or the management of the business. In that case there was nothing to connect Coyne with the management or ownership of the establishment, the sole evidence being that on one occasion he had stepped back of the counter and changed a bill for himself. In the Rosen case we said: "There is no evidence of supervision actively directing the employees in the booth."

As to the complaint with respect to the charge of the court, it is sufficient to say that the remarks complained of had reference to those defendants who were fugitives and did not appear for trial. The remarks of the court were evidently prompted by questions of defendant's attorney with reference to those defendants who were absent at the time of the trial and were apparently residents of another county. In view of the fact that the jury were informed that McClurg was a resident

of Delaware County and had been for many years, there was no opportunity for confusion on the part of the jury and the remarks could not have prejudiced defendant's case.

The assignments of error are overruled, the judgment is affirmed; and it is ordered that the record be remitted to the court below and that the defendant appear in the court below at such time as he may be called and that he be by that court committed until he has complied with the sentence or any part of it which had not been performed at the time his appeal was made a supersedeas.